# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

KATHLEEN FAZZIE,

                Plaintiff,

-vs-                                      Case No.  6:06-cv-210-Orl-KRS

RAMM OF CENTRAL FLORIDA,
ROBERT SMITH,

                Defendants.

_____

## ORDER

This cause came on for consideration without oral argument on the following motion:

| | |
|---|---|
| **MOTION:** | **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** (Doc. No. 22) |
| **FILED:** | **September 28, 2007** |

Plaintiff Kathleen Fazzie filed a complaint in this case on February 21, 2006.  Doc. No. 1.  In it, she alleged that RAMM of Central Florida ("RAMM") and Robert Smith (collectively "Defendants") violated the overtime provisions of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA").[1]

In the present motion, Defendants argue that Fazzie failed to establish coverage under the FLSA, that Fazzie's claim is untimely, and that Fazzie failed to establish a violation of the FLSA. Defendants, therefore, move for summary judgment. In support of the motion, Defendants filed the Affidavit of Robert Smith, doc. no. 23-2 ("Smith Aff."), with supporting exhibits.

_____

[1] Fazzie subsequently filed an amended complaint.  Doc. No. 7.

Fazzie filed a memorandum in opposition to the motion for summary judgment.  Doc. No. 24. She submitted in support of the motion excerpts from the depositions of Robert Smith, doc. no. 24-2 ("Smith Dep."), Carrie Weldon, doc. no. 24-6 ("Weldon Dep."), and Fazzie, doc. no. 24-5 ("Fazzie Dep."),  the Affidavit of Kathleen Fazzie, doc. no. 24-4 ("Fazzie Aff."), and two deposition exhibits, doc. nos. 24-3 & 24-7.

The case has been referred to me for disposition pursuant to 28 U.S.C. § 636(c).

## I.     STANDARD OF REVIEW.

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(c); *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458 (11th Cir.1994). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party bears the initial burden of showing that no genuine issue of material fact exists.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted).  Thereafter, summary judgment is mandated against the non-moving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id*. at 322, 324-25. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations

unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir.1985) ("conclusory allegations without specific supporting facts have no probative value").

"Courts must construe the facts and draw all inferences in the light most favorable to the nonmoving party ... [e]ven though the facts accepted at the summary judgment stage of the proceedings may not be the actual facts of the case." *Davis v. Williams*, 451 F.3d 759, 763 (11th Cir.2006) (internal citations and quotations omitted).  The Court is not, however, required to accept all of the nonmovant's factual characterizations and legal arguments. *Beal*, 20 F.3d at 458-59.  If material issues of fact exist, the Court must not decide them, but must deny the motion and proceed to trial. *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1246 (11th Cir.1999).

## II.    STATEMENT OF FACTS.

RAMM and Marine Interest Group ("MIG") are separately incorporated businesses.  Smith Aff. ¶ 5.  Smith was the President and the sole owner of RAMM, and he was the President and a 50% shareholder in MIG.  Smith Aff. ¶¶ 2. 3; Smith Dep. at 12.  Both companies conducted business from the same office suite, but MIG had a designated office space within the suite. Smith Dep. at 13; Fazzie Dep. at 59-60.

RAMM engaged in drywall and metal framing work, which was conducted solely within Florida.  Fazzie Dep. at 58; Smith Aff. ¶¶ 15-17.  RAMM purchased all of its materials from vendors within Florida.  Smith Aff. ¶ 17.  MIG engaged in trucking.  Smith Dep. at 13.[2] MIG employed one

---

[2] The Court notes that Fazzie's brief describes MIG as being engaged in the interstate transportation of boats, but the evidence cited in support of that contention, Fazzie Dep. at 14, was not presented to the Court.

person, Raymond Kanger, who ran MIG's trucking operation.  *Id*. at 13.  RAMM and MIG did not share any employees.  Smith Aff. ¶¶ 6, 7; Smith Dep. at 13.

During the time that Smith was the President of and a 50% shareholder in MIG, MIG never earned gross revenues in excess of $500,000.00.  Smith Aff. ¶ 4.  A 2004 income tax return for RAMM reflects that RAMM had more than $7 million in gross receipts or sales that year.  Doc. No. 24-3.

RAMM employed Fazzie as a receptionist and data processor.  Fazzie Dep. at 12, 58; Smith Aff. ¶¶ 7, 9.  Fazzie worked in this position from December 15, 2003, through December 19, 2003, and again from January 5, 2004, through August 23, 2004. Smith Aff. ¶ 9.  Fazzie worked in the office suite that housed both RAMM and MIG.  Smith Dep. at  11, 12.

Fazzie's duties were to answer the telephone and to input work on the computer.  Fazzie Dep. at 21.  Fazzie avers that the telephone at her desk contained multiple lines, including a line for MIG. Fazzie Aff.  ¶ 2.  Fazzie attests that several times per day, she would answer interstate calls on the MIG line and would take information from truck drivers regarding their mileage and expenses.  *Id*.; Fazzie Dep. at 57-58.  Fazzie would then give the information to RAMM's Carrie Weldon[3] or to Smith.  *Id*.  Fazzie would sometimes use the computer in the MIG office when hers malfunctioned and would answer MIG telephones from that location when she was there.  Fazzie Dep. at 60.  Fazzie also would sometimes go to the MIG office to retrieve file books and other things that she needed to perform her job with RAMM.  Fazzie Dep. at 60.

---

[3] In her memorandum, Fazzie contends that Weldon was RAMM's office manager and Fazzie's immediate supervisor.  Doc. 24 at  3, 8.  No evidence was presented to the Court regarding Weldon's title or duties.

Smith avers that Fazzie's duties were limited to performing work for RAMM and that she was not authorized to perform work for MIG. Smith Aff. ¶¶ 7-8. Although Fazzie admits that, at the time she was hired, she was not told she would have to do any work for MIG, Fazzie Dep. at 59-60, she attests that Smith instructed her at some point to answer the MIG telephone line. Fazzie Aff. ¶2.

Smith avers that Fazzie's work hours were from 8:00 a.m. until 5:00 p.m. with one hour off for lunch. Smith Aff. ¶ 10. Near the beginning of her employment, Fazzie submitted a time sheet for the week ending January 9, 2004, in which she indicated that she had worked 43 hours that week. Doc. 23-3 at 1 ("Weekly Time Sheet"); Smith Aff. ¶ 13. The time sheet bears the notation, "Do not pay ot ½ hour lunch not approved per Rob [Smith]. F's to be taking 1 hour lunches." Weekly Time Sheet at 1. Smith attests that after Fazzie submitted this time sheet, Fazzie was instructed to work only 40 hours per week, to not work past 5:00 p.m., and to take a one hour lunch each day. Smith Aff. ¶ 13.

Smith denies knowledge of Fazzie working overtime. Smith Aff.¶ 12. He avers that after she submitted the time sheet showing that she worked 43 hours, Fazzie did not tell him that she was working more than 40 hours a week or that she was entitled to overtime wages. Smith Aff.¶¶ 18-21. Smith submitted true and correct copies of RAMM's payroll records and other evidence to establish that RAMM's records establish that Fazzie did not work more than 40 hours in any work week. Smith Aff. ¶¶ 19-21 & doc. nos. 23-3, 23-5 through 23-7.

Fazzie attests that there are no employer records of her overtime because she was told by Smith and Weldon not to submit any more time sheets, and her time thereafter was submitted by Weldon. Fazzie Aff. ¶¶ 5-6. Fazzie avers that she worked past 5:00 p.m. every day through the end

of April and, after that, on every Friday when she stayed late to distribute pay checks.   Fazzie Dep.

at 22-23.  Fazzie attests that she was told to take one hour off for lunch each day, but that she typically

ate lunch at her desk while working.  Fazzie Aff.¶ 4; Fazzie Dep. at 11.  Fazzie avers that Weldon was

aware that she worked through lunch and that she worked more than 40 hours per week, and that

Weldon deliberately failed to record her work hours accurately.  Fazzie Aff. ¶¶ 3, 6.

**III.    ANALYSIS.**

> *A.    FLSA Coverage.*

Section 207(a) of the FLSA generally describes which employees are covered by the FLSA.

That section provides in relevant part:

> Except as otherwise provided in this section, no employer shall employ
> any of his employees who in any workweek is engaged in commerce
> or in the production of goods for commerce, or is employed in an
> enterprise engaged in commerce or in the production of goods for
> commerce, for a workweek longer than forty hours unless such
> employee receives compensation for his employment in excess of the
> hours above specified at a rate not less than one and one-half times the
> regular rate at which he is employed.

29 U.S.C. § 207(a)(1).  Defendants contend that Fazzie failed to establish either individual coverage

or enterprise coverage under the FLSA and, therefore, they are entitled to summary judgment.  The

Court will address each argument in turn.

> 1.    <u>Individual Coverage</u>.

An employee has individual coverage under the FLSA where the employee proves that she was

"(1) engaged in commerce or (2) engaged in the production of goods for commerce." *Thorne v. All*

*Restoration Servs., Inc.*, 448 F.3d 1264, 1266 (11th Cir. 2006).  An employee may satisfy the

"engaged in commerce" requirement by regularly using the instrumentalities of interstate commerce

in her work. *Id*. In the construction industry, an employee's regular and recurrent use of an telephone for interstate communications meets this requirement. *Id*. (citing 29 C.F.R. § 776.23(d)(2)).

Fazzie offered no evidence that the telephone calls she answered for RAMM involved interstate communications. Rather, she relies on the telephone calls she answered for MIG related to its interstate trucking business to establish that she has individual coverage under the FLSA. Construing the evidence in the light most favorable to the non-moving party, Fazzie's work for RAMM which involved answering the MIG telephone line could satisfy the requirement of "engaging in commerce" if that work were regular and recurrent and the content of the communications otherwise satisfied the interstate commerce requirement. *Cf. Montalvo v. Tower Life Bldg.*, 426 F.2d 1125, 1143 (5th Cir. 1970)(finding that company employees who regularly received and papers from and sent checks to residents from outside the state were engaged in commerce for purposes of the FLSA). As the parties dispute the extent of Fazzie's responsibilities regarding MIG's interstate telephone calls, summary judgment is not appropriate as to this theory.

2.      Enterprise Coverage**.**

A second basis for FLSA coverage is enterprise coverage. The FLSA defines an "enterprise engaged in commerce or in the production of goods for commerce" in relevant part as:

[A]n enterprise that –

> (A)(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and
>
> (ii)      . . . whose annual gross volume of sales made or business done is not less than $500,000. . . ."

29 U.S.C. § 203(s)(1)(A)(i) - (ii).   No evidence has been presented that RAMM meets the requirements of § 203(A)(i), other than the disputed evidence concerning Fazzie answering MIG's telephone.

Fazzie argues that RAMM and MIG constitute a single enterprise and, therefore, enterprise coverage exists. For RAMM and MIG to constitute a single enterprise, the following three elements must all exist: (1) related activities; (2) unified operation or common control; and (3) a common business purpose. *Donovan v. Easton Land & Dev. Co.*, 723 F.2d 1549, 1551 (11th Cir.1984).

### a.  Related Activities.

Activities of two corporations are related when they are the "same or similar" or when they are "auxiliary and service activities." *Id*.  Auxiliary and service activities are activities that involve "'operational interdependence in fact.'" *Id*. (quoting *Brennan v. Veterans Cleaning Serv., Inc.*, 482 F.2d 1362, 1367 (5th Cir. 1973)).  Relatedness through auxiliary and service activities may be proven where the corporations share centralized office functions (such as bookkeeping, auditing, billing, purchasing, advertising), centralized warehousing of materials, or regularly share employees. *See Brennan*, 482 F.2d at 1366-67.   Conversely, if each entity is financially separate, makes its own managerial decisions, and there is no tax benefit or strengthened public image by linking of the two companies, relatedness does not exist. *Donovan*, 723 F.2d at 1551-52.

The evidence before the Court shows that RAMM and MIG are not engaged in the same or similar activities – one is in the construction business and the other is in the trucking business. Fazzie relies on the "auxiliary and service activities" prong of the analysis.  She argues that because the two corporations shared office space, telephone systems, and employees, RAMM and MIG are related.

Initially, the Court notes that it has been presented with no evidence of shared employees other than Fazzie's answering of MIG's telephone line.  Further, although both RAMM and MIG are located at the same address, MIG has a separately designated space at the address. There has been no evidence regarding any of the financial arrangements between the two corporations or any other evidence of centralized office functions. Accordingly, this record is insufficient to show that either RAMM or MIG obtained substantial advantages from auxiliary or service activities.

### b.      Unified Operation or Common Control.

Fazzie argues that common control existed over RAMM and MIG because of Smith's ownership interests in the two corporations.  The determinative question is whether a common entity or person has the power to control a related business operation.  *Donovan*, 723 F.2d at 1552.  A controlling ownership in a business establishes that the power of control exists.  *Id*.  It does not matter whether control is actually exercised.  *Id*.

Although Smith was the sole owner of RAMM, he only owned a 50% interest in MIG. "Ownership sufficient to exercise control exists when there is *more than* 50% ownership of voting stock."  29 C.F.R. § 779.223 (emphasis added).  Thus, the evidence does not establish that Smith exercised control over both companies as a matter of law.

"'[C]ontrol may exist with much more limited ownership . . . .  The question whether the ownership in a particular case includes the right to exercise the requisite 'control' will necessarily depend upon all the facts in the light of the statutory provisions." *Id.*   "[T]he test of common control is not ownership, but rather whether there is a common control center with the ultimate power to make binding policy decisions for all units of the enterprise." *See Dunlop v. Ashy*, 555 F.2d 1228, 1231 (5th

-9-

Cir. 1977).  "[T]he term 'unified operation' has reference to the method of performing the related activities[;] it means combining, uniting, or organizing their performance so that they are in effect a single business unit or an organized business system which is an economic unit directed to the accomplishment of a common business purpose." *Id.*  No evidence has been presented to establish common control or unified operation as to RAMM and MIG.

### c.       Common Business Purpose.

"Many of the considerations relevant in determining whether businesses perform 'auxiliary or service activities' are also relevant in ascertaining whether they have a common business purpose. *Brennan*, 482 F.2d at 1367.  To establish a common business purpose, "'more than a common goal to make a profit" must be shown.  *Id.*  As discussed above, there is no evidence that RAMM and MIG engaged in a common business purpose.

Therefore, the evidence is insufficient to establish enterprise coverage under the FLSA based on a single enterprise theory.

### B.       *Overtime Liability.*

Defendants also request summary judgment on the basis that Fazzie was not authorized to work overtime, and that the payroll records reflect that Fazzie did not work more than 40 hours in any work week

Even if the evidence established that Fazzie was instructed to take a one hour lunch and was instructed to stop working at 5:00 p.m., that evidence would not preclude liability if RAMM and Smith knew or had reason to know that Fazzie worked more than 40 hours in a work week. *See Allen v. Bd. of Public Educ.*, 495 F.3d 1306, 1314-25 (11th Cir. 2007); *see also* 29 C.F.R. § 785.11 ("Work

-10-

not requested but suffered or permitted is work time."). "The reason an employee continues to work beyond his shift is immaterial; if the employer knows or has reason to believe that the employee continues to work, the additional hours must be counted [as hours worked]." *Reich v. Dep't of Conservation and Natural Res.*, 28 F.3d 1076, 1082 (11th Cir. 1994). For meal times to be excluded from hours worked, the employee must be completely relieved from duty. 29 C.F.R. § 785.19(a).

Although Smith attests that he did not know that Fazzie was working more than 40 hours per week, Fazzie presented evidence that Weldon knew that she worked during her lunch hour and more than 40 hours per week. Therefore, material issues of fact preclude summary judgment on the theory that neither RAMM nor Smith authorized Fazzie to work overtime or knew or had reason to know that she worked overtime.

Fazzie also presented evidence that RAMM's payroll records do not accurately reflect the hours she worked. She avers that Weldon was the person responsible for submitting her work hours to RAMM and that Weldon did not accurately record Fazzie's hours. Material issues of fact exist regarding the accuracy of RAMM's records which preclude summary judgment on the theory that the records establish that Fazzie did not work overtime. *See Allen*, 495 F.3d at 1316.

C.    *FLSA Statute of Limitations.*

Defendants argue that the only record evidence of overtime was for the work week ending on January 9, 2004. Defendants contend that they did not wilfully violate the FLSA and, under the two-year statute of limitations for the FLSA, Fazzie's claim is untimely because she filed her complaint on February 21, 2006.

-11-

Fazzie's claim is not limited to the week ending January 9, 2004, but includes claims within two years prior to the filing of her complaint. Such claims are timely.

Although the statute of limitations is ordinarily two years, a cause of action arising out of a willful violation of the FLSA may be filed within three years after the cause of action accrued. 29 U.S.C. § 255(a). "A willful violation may be found when the employer disregarded the very possibility that it was violating the statute." *Allen*, 495 F.3d at 1323 (internal quotations and citations omitted). A willful violation may exist even if the employer did not knowingly violate the FLSA, but simply disregarded the possibility that it might be violating the FLSA. *Id*. at 1324.

With respect to those claims arising prior to February 21, 2004, Fazzie presented evidence that Defendants at best disregarded the possibility that she might be working overtime by refusing to let her submit her own time records, and, at worst, deliberately falsified the records of the time she worked to avoid having to pay overtime compensation due under the FLSA. Thus, disputed issues of material fact exist with respect to whether Defendants' wilfully violated the FLSA. Accordingly, summary judgment in favor of Defendants is not appropriate on the issue of the applicable statute of limitations.

## IV.     DETERMINATION OF MATERIAL FACTS NOT IN ISSUE.

When a court does not render summary judgment as to an entire action, it should determine what material facts are not genuinely at issue and enter an appropriate order. Fed. R. Civ. P. 56(d). The Court finds the following facts are not in dispute: (1) Smith is the sole owner of RAMM; (2) Smith owns only 50% of MIG;  (3) Raymond Kanger ran MIG's operations; and, (4) RAMM and MIG were not under common control or unified operation.  Given the undisputed facts about

-12-

ownership and control of MIG's operations, Fazzie cannot establish enterprise coverage under the FLSA using the single enterprise theory. Accordingly, she will not be permitted to present evidence or argument on the single enterprise theory at trial.

**V.     CONCLUSION**.

For the reasons set forth herein, Defendants' Motion for Summary Judgment (Doc. No. 22) is **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida on January 23, 2008.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE